IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **LEVAR LEE # 351692,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | NO. 1:25-cv-00034 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| **BUCKY ROWLAND,** *Sheriff of Maury* ) | MAGISTRATE JUDGE HOLMES |
| *County Jail, individually and in their* ) | |
| *official capacity, et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Levar Lee, an inmate of the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, filed a pro se complaint, alleging violations of Plaintiff's civil rights. (Doc. No. 1).

Plaintiff also filed an Application for Leave for Proceed In Forma Pauperis ("IFP Application") (Doc. No. 5), a Motion to Appoint Counsel (Doc. No. 6), a Motion for Extension of Time to Comply with the Court's instructions regarding the IFP Application (Doc. No. 7), and a "Request/Letter re summons and additional filings" (Doc. No. 8). The Court must begin with the filing fee.

### I. FILING FEE

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation (Doc. Nos. 5, 9), it appears that Plaintiff lacks sufficient financial resources from which to pay the

1

full filing fee in advance. Therefore, his IFP Application (Doc. No. 5) is **GRANTED**. His Motion for Extension of Time to Comply (Doc. No. 7) is **DENIED AS MOOT**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the HCCF to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. MOTIONS

Plaintiff has filed two motions in addition to an Amended Complaint.

**A. Motion to Appoint Counsel**

Plaintiff has filed a Motion to Appoint Counsel. (Doc. No. 6). The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981). Thus, unlike in criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), *aff'd*, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.*, No. 91-5759, 947 F.2d 947 (6th Cir. 1991) (citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).

In support of his request for counsel, Plaintiff states that he is unable to afford counsel, his imprisonment greatly limits his ability to litigate, he believes the issues in this case are complex, he has limited access to a law library, and Plaintiff has been unable to obtain a private attorney. (Doc. No. 6 at 1). Plaintiff's circumstances are typical to most incarcerated pro se plaintiffs.

Plaintiff has not demonstrated exceptional circumstances warranting the appointment of counsel. His Motion to Appoint Counsel (Doc. No. 6) is **DENIED WITHOUT PREJUDICE**.

**B. "Request/Letter re summons and additional filings"**

In his "Request/Letter re summons and additional filings" (Doc. No. 8), Plaintiff asks several questions about the Notice Regarding Consent of the Parties he received from the Court such as what is the benefit of agreeing to case assignment to a magistrate judge. (*Id*. at 1).

Each case is assigned randomly to two judges—a district judge and a magistrate judge. A litigant cannot choose his judges. District judges are appointed by the President of the United States and confirmed by the United States Senate pursuant to Article III of the Constitution. District judges are appointed for life and cannot be removed unless impeached. Magistrate judges are appointed by the district judges of the Court to eight-year terms. They may and often do serve more than one term. It is common for a magistrate judge to handle pre-trial matters (to supervise discovery, set schedules, and attempt to settle the case) and other parts of the case assigned to the magistrate judge by the district judge.

If all parties agree, a plaintiff may consent to have his whole case heard by the magistrate judge. After a district judge orders the transfer of a case, a magistrate judge may conduct any and all proceedings in the case, including the trial. If the case is appealed, it will go directly to the Sixth Circuit Court of Appeals. There are a number of benefits to consenting to proceed before a magistrate judge. District judges are required to give priority to federal criminal trials, which often are lengthy and complicated. By consenting to proceed before a magistrate judge, a litigant may find that his lawsuit moves along more quickly.

Additional information is available in free resources the Court has developed for pro se litigants. Plaintiff may request a full copy of the Pro Se Prisoner Civil Rights Handbook by contacting the Clerk's Office in writing or by telephone.

### III. PLRA SCREENING OF THE COMPLAINT

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**A. Section 1983 Standard**

Plaintiff brings his claims under 42 U.S.C. § 1983 which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

**B. Facts Alleged in the Amended Complaint**

Plaintiff has filed an Amended Complaint (Doc. No. 10), which is now the operative pleading in this case. The allegations of the Amended Complaint are assumed true for purposes of the required PLRA screening.

The Amended Complaint alleges that, while Plaintiff was incarcerated at the Maury County Jail in Columbia, Tennessee, the air vent in Plaintiff's cell was completely covered with rust, mold, and unknown substances. On January 29, 2024, a foreign object from the air vent landed in Plaintiff's eye. Plaintiff was taken to the jail's medical department, and Defendant Nurse Genie observed Plaintiff's eye and told him "she couldn't see anything and there was nothing further she could do." (*Id*. at 2). Plaintiff asked Nurse Genie to "rinse and flush his eye out", but she said the eye flush station was not functional. (*Id*.)

Several hours later, officers escorted Plaintiff to the Maury Regional Hospital emergency room. There, nurses flushed the foreign object out of Plaintiff's eye. He was then returned to the Maury County Jail. Plaintiff requested to be taken to an outside optometrist or ophthalmologist, and Defendant Penny (a nurse practitioner) told Plaintiff that he would need to pay $15 to get a referral to an outside doctor. Defendant Penny prescribed steroid eye drops. Plaintiff believes that

she did so to avoid the county incurring the expense of sending Plaintiff to an outside physician for examination and treatment.

Plaintiff alleges that, afterwards, he suffered for ten weeks with blurred vision, making him unable to read or write, and continued to seek outside care. Nurse Vanessa ultimately scheduled Plaintiff an appointment with an outside optometrist in April 2024. The optometrist diagnosed Plaintiff with a coronary abrasion and prescribed bi-focal glasses. Before the foreign object fell into Plaintiff's eye, he had perfect vision.

**C. Analysis**

The Amended Complaint names the following Defendants: Bucky Rowland, Sheriff of Maury County; Deborah Wagonshultz, Maury County Jail Administrator; Jane Doe, Nurse Practitioner at Maury County Jail ("Nurse Penny"); and Jane Doe, Registered Nurse at Maury County Jail ("Nurse Genie"). Each Defendant is sued in his or her individual and official capacities. (Doc. No. 10 at 1-2). Plaintiff alleges violations of his Eighth Amendment rights.

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cty. Sheriff Dep't*, No. 1:10CV672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth Amendment protects prison inmates from "cruel and unusual punishments," U.S. CONST. amend. VIII, which includes "extreme deprivations" that deny "the minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for

their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions-of-confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To satisfy the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id*. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*. at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

Construed liberally, the Amended Complaint alleges conditions-of-confinement claims and deliberate indifference to Plaintiff's medical needs claims under the Eighth Amendment of the United States Constitution.

1. Conditions of Confinement

The Amended Complaint alleges that Plaintiff was exposed to a substantial risk to his health or safety because an air vent in his cell was "completely covered with rust, mold, and other unknown substances and/or liquids." (Doc. No. 10 at 2). Courts have recognized health risks attendant to the presence of asbestos or mold. *See, e.g., Taylor v. Madison Cnty. Sheriff's Dep't*, No. 19-1230-JDT-cgc, 2019 WL 6718676, at *2 (W.D. Tenn. Dec. 10, 2019) (stating "[e]xposure to black mold may constitute an objectively serious risk of serious harm to inmate health under the Eighth Amendment"). But Plaintiff does not allege that he was actually exposed to mold, and he does not allege that any Defendant knew that housing Plaintiff in that particular cell would expose Plaintiff to mold.

Nonetheless, the allegations of the Amended Complaint support the inference that Plaintiff suffered health consequences because of his exposure to a foreign object that fell out of the vent and into Plaintiff's eye on January 29, 2024. Plaintiff, however, does not allege any facts that support the inference that Defendants were aware that the air vents posed any risk of harm generally or that Defendants were aware that the air vents might pose a particular risk of harm to Plaintiff. Stated differently, Plaintiff has failed to allege that Defendants were aware of a substantial risk of serious harm from the air vents and then disregarded that risk. Thus, Plaintiff has failed to allege facts to support his conclusory statements that Defendants, acting in their individual capacities, violated his Eighth Amendment rights by housing him in the cell with the complained-of air vents.

Moving now to Plaintiff's official-capacity claims, when a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here,

the Amended Complaint alleges that Defendants are employees of the Maury County Jail, which is operated by Maury County, Tennessee. (Doc. No. 10 at 2). Thus, a claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Maury County or its agent. *Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short, for Maury County to be liable Plaintiff under Section 1983, there must be a direct causal link between an official county policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. 658, 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 393 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Here, the allegations of the Amended Complaint are insufficient to state a claim for municipal liability against Maury County under Section 1983. The complaint does not identify or describe any of the county's policies, procedures, practices, or customs relating to the incidents at issue; the complaint does not identify any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiff's rights; and it does not identify any other previous instances of similar violations that would have put the county on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012). To the extent the Amended Complaint alleges that the Sheriff or Jail Administrator knew that the vents in Plaintiff's cell were unsanitary and failed to take action to remedy the alleged

unconstitutional conditions of Plaintiff's confinement, "[m]ere blanket assertions that [Defendants] 'tolerated' or 'condoned'" the conditions "aren't enough." *Howse v. Hodous*, 953 F.3d 402, 411 (6th Cir. 2020) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)). Consequently, the Court finds that the complaint does not contain sufficient allegations to state a claim for municipal liability against Maury County. Plaintiff's Section 1983 claims against Defendants in their official capacities (which are claims against Maury County) therefore must be dismissed.

2. Medical Care

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' towards the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). An Eighth Amendment deliberate indifference claim against an individual actor has objective and subjective components. *Farmer*, 511 U.S. 825, 834; *Blackmore,* 390 F.3d 890, 895. The objective component requires showing "the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. 294, 298). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. In this Court's opinion, a foreign object in one's eye constitutes a sufficiently serious medical need.

"The subjective component requires a plaintiff to show that 'each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it.'" *Greene v. Crawford Cnty, Mich.*, 22 F.4th 593, 605-06 (6th Cir. Jan. 4, 2022) (quoting *Griffith*

11

*v. Franklin Cnty, Ky.*, 975 F.3d 554, 568 (6th Cir. Sept. 21, 2020). This showing "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, and is instead "equivalent to criminal recklessness[,]" *Greene*, 22 F.4th at 606 (quoting *Griffith*, 975 F.3d at 568).

Plaintiff alleges no facts that support an inference that Defendants Rowland or Wagonshultz were made aware that a foreign object fell into Plaintiff's eye, necessitating a need for medical care. Where a plaintiff has not alleged that the named defendants were aware of the serious medical need, he necessarily has not alleged that those defendants were deliberately indifferent to that need. Therefore, as to Defendants Rowland and Wagonshultz in their individual capacities, Plaintiff has not stated a Section 1983 claim for deliberate indifference to the alleged serious medical need.

As for Plaintiff's claims against Defendant nurse practitioner Penny in her individual capacity, Plaintiff alleges that she misdiagnosed Plaintiff's injury and treated it improperly. (Doc. No. 10 at 4). However, complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id*. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In sum, generally speaking, "[w]hen a prison doctor [or nurse] provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

However, Plaintiff also alleges that, when Plaintiff's "injury and vision were worsening," Defendant Penny prescribed steroid eye drops "to try to take a less expensive option rather than refer Plaintiff to a professional, which would definitely be more expensive than prescribing some eye drops." (Doc. No. 10 at 4). Plaintiff therefore has alleged facts that Defendant Penny's decision was not based on medical judgment, but rather on non-medical factors such as cost. These allegations could support a finding of deliberate indifference. *See Jackson v. Corizon Health, Inc.*, 596 F. Supp.3d 834, 839 (E.D. Mich. Mar. 31, 2022) ("But if Plaintiff raises a genuine issue of material fact that the decision was not based on medical judgment, but rather on non-medical factors such as cost, the decision of whether the subjective prong has been met must be left to the factfinder) (citing *Rhinehart v. Scutt*, 894 F.3d 721, 761 (6th Cir. 2018) (Moore, J., concurring) ("If a rational factfinder could conclude that [Defendant's] justification for denying [Plaintiff] a TIPS procedure was mere pretext to mask deliberate indifference, then summary judgment is improper.")). Thus, Plaintiff's claim against Defendant Penny in her individual capacity will proceed for further development.

Plaintiff alleges that Defendant Genie, a nurse, "failed to initially recognize and acknowledge the seriousness of Plaintiff's injury", failed to "get Plaintiff transported to ER in a timely manner," and "administered misdiagnosed steroid eye drops to Plaintiff . . . ." (Doc. No. 10 at 4). Although Plaintiff believes that he should have received different or additional treatment, a prisoner's difference of opinion regarding diagnosis or treatment does not rise to the level of an Eighth Amendment violation. *See Estelle*, 429 U.S. at 107. Further, Plaintiff's allegations of negligence and/or medical malpractice do not support constitutional liability under Section 1983. *Estelle*, 429 U.S. at 105-06. Thus, Plaintiff's allegations do not state a colorable deliberate indifference claim under Section 1983 against Defendant Genie in her individual capacity.

Plaintiff's official-capacity claims against all Defendants fail for the same reasons discussed above. *See supra* at 9-11.

## IV. CONCLUSION

Having conducted the screening required by the PRLA, the Court finds that the allegations of the Amended Complaint state a colorable Eighth Amendment deliberate indifference to serious medical needs claim under Section 1983 against Defendant Jane Doe (Nurse Practitioner Penny) in her individual capacity. This action shall proceed as to that claim.

In all other respects, the Amended Complaint fails to state Section 1983 claims upon which relief can be granted. Accordingly, the Section 1983 claims against Defendants Rowland, Wagonshultz, and Jane Doe (Nurse Genie) in their individual and official capacities are **DISMISSED**. Likewise, the official-capacity claim against Defendant Jane Doe (Nurse Practitioner Penny) is **DISMISSED**.

Plaintiff's "Request/Letter re summons and additional filings" (Doc. No. 8) is **GRANTED** insofar as the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendant Jane Doe (Nurse Practitioner Penny). Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on Defendant Jane Doe (Nurse Practitioner Penny). Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

15

Case 1:25-cv-00034   Document 11   Filed 12/05/25   Page 15 of 15 PageID #: 69